Good morning, Your Honors. May it please the Court, in granting summary judgment against my clients, Alpha & Omega USA, Inc., Doing Business as Travel and Transportation, and Victor Cernotinsky, the District Court disregarded established summary judgment standards by properly weighing the evidence, failing to consider disputed material facts in a light most favorable to my clients, and on many issues, completely disregarding the defendant's evidence that contradicted some of the key factual findings supporting the District Court's grant of summary judgment. In its summary judgment order, the District Court indicated that defendant's contradictory evidence was unreliable and cites Scott v. Harris, which the U.S. Supreme Court said in that case, opposing parties, when they tell two different stories, one which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on summary judgment. But in this case, the District Court didn't identify what it thought were factual assertions rather that were blatantly disregarded by the record. And indeed, the Secretary in his To the contrary, the summary judgment record in this case shows that there are numerous, numerous genuine issues of material fact that exist such that the District Court erred in granting summary judgment. This appeal involves six issues, the first being the threshold issue, Your Honors, and that is whether an employee-employee relationship existed between my clients and the drivers. Because that type of relationship, of course, is a prerequisite for bringing any sort of claim under the Fair Labor Standards Act. If the Court, if this Court determines that the District Court was correct in finding as a matter of law that such a employer-employee relationship existed, then several other issues come into play, the first being whether the defendants knew or should have known that the drivers were working in excess of 40 hours per week. Secondly, whether the waiting time that existed between trips should be counted as compensable working time. Next, whether the drivers were actually accurately recording the pickup and drop-off times in performing their services. Next, whether in connection with the claim that some of the drivers did not earn a minimum wage, whether that was actually attributable to them deliberately choosing not to work enough hours in order to generate at least a minimum wage. And then finally, whether the defendants are liable for liquidated damages, because in the District Court's eyes, my clients failed to meet their burden of showing good faith and reasonable grounds for believing that they were not in violation of the Fair Labor Standards Act. Now as to the threshold question in this case, Your Honors, that being whether the drivers were employees or independent contractors, the courts have recognized that ultimately this is a legal question. However, it may not be resolved on summary judgment if there are disputed material facts, and that is the case here. Are any of the factors in the economic realities test that seems to apply only here, are any of those factors more important than the others, or do we balance them all out? Your Honor, I think the courts have indicated, at least in my reading, that the most important factor is probably the control factor, whether the purported employer either had a right to control or actually exercised control over the purported employee. Well, and that's what the common law says. I have a lot of experience dealing with it both at the State and Federal level, and control tends to be the most important factor. I just was curious whether that carried over to the realities test too. I believe it does, Your Honor. And I think another core factor would be whether the workers at issue had an opportunity for profit and loss in performing their services. But indeed, I believe the core factor is the control factor. Now, there seems to be a distinction between, and some courts have expressed that factor as whether the purported employer had the right to control, and other courts have expressed it as whether the purported employer actually exercised the amount of control necessary. I'd like to dig into that factor a little bit deeper. It's my understanding that there is contradictory evidence on the control factor, and that one of the issues is whether or not drivers could decline trips and whether they could set their own hours. Could you address the testimony on that and why you think there's still a dispute effect on that issue? Your Honor, the record consists primarily of the deposition testimony of the dispatcher that performed dispatching services for my client for 20 years. And in contrast, the evidence offered by the Secretary consisted of three, in our view, cherry-picked drivers that really are not representative of the 21 drivers that are at issue in this case. So, Maria Cernutinsky, who is the dispatcher and indeed the sister of my client, Victor Cernutinsky, she testified that they absolutely have a right to decline any trips, that they don't suffer any penalty for doing so, that they set their own schedule, they can begin their day at whatever time they desire, they can end their day at any time they want, they can take breaks during the course of the day. Maria Cernutinsky testified that some drivers will indeed want to have a trip assigned to them right after they complete one trip, while others might take several hours off to do whatever. My client doesn't even know what they do on the times, the waiting times between these trips. So, it's our position, Your Honor, that there are numerous fact issues in connection with the control factor. There is, however, this distinction between the right of control and whether there is an actual exercise of control. And one court in the Third Circuit indeed said that actual control of the manner of This court may have to weigh in on how to properly express the control factor. In any event, the district court focused on the alleged exercise of control by travel on transportation, and the factual findings on which the district court based its conclusion that travel on did exercise control were that travel ons dispatched pressured drivers to decline, that travel on commanded drivers to work at specific times, the travel on kept regular hours over drivers, the travel on required permission to take breaks, the travel on constantly supervised the drivers by requiring them to submit travel logs for each trip, and travel on supervised the drivers every movement in their schedule. And we point out in our opening brief all of the contradictory facts addressing each of the findings that the district court relied in concluding that there was, that the control factor weighed in favor of finding an employee-employee relationship. And I think, Your Honor, it is relevant to look at the evidence that were offered by the parties. Again, the evidence primarily consisted of deposition testimony of Maria Cernotinsky, the dispatcher that had worked in scheduling drivers for 20 years, and the deposition of Victor Cernotinsky, the owner and sole employee of travel on transportation. Was there any documentary evidence that was submitted on summary judgment? I'll tell you why I'm asking that, because ultimately there's a line in the district court's order that shows a healthy dose of distrust of your client's evidence, where I think he says something along the lines of, there's all this testimony, but it's just completely inconsistent with everything else in the record. I'm trying to figure out, he seems to be weighing things, but there is an opening for if there's documentary evidence that blatantly contradicts the testimony, perhaps summary judgment would be appropriate on like a Scott v. Harris theory. I agree, Your Honor, but I cannot find any of this evidence that, I mean, other than the three declarations that were offered by three different drivers that contradict the testimony of, for instance, Maria Cernotinsky, who indeed, we believe, has the deepest knowledge in connection with the relationship between the drivers and travel on transportation. So there were no procedures, there were, obviously there's no contracts or anything like that that would show an employee's status. There wasn't much by way of documents submitted in the summary judgment record then? No, Your Honor, other than the written independent contract agreements, which, of course, address the right of my client to control the means and manner in which the drivers perform their services. Thank you. The Secretary, in his brief, cites two so-called strong factors of control that were exercised by travel on. For instance, the Secretary asserts that travel on required drivers to complete vehicle inspections and trip logs and turn them into travel on. But the record shows, Your Honors, that the trip logs were not required by my client, but rather were services and by the private insurance companies that paid my client. The vehicle inspections were not a requirement imposed by travel on, but rather they were imposed by the Minnesota Department of Transportation pursuant to statute. It's our position, therefore, Your Honor, that a special transportation provider such as my client, their compliance with government regulations that require it to exercise control over a driver, they don't evidence control by my client. They rather evidence the government's control over both the drivers and my client. And so that compliance does not, it's not indicative of control imposed by my client and, as such, should not at all be considered in the control factor. Your Honor, with a little bit of time left in my opening remarks, I want to address the liquidated damage issue here. There the district court found that my client didn't meet its burden of showing that they acted in good faith and had reasonable grounds for believing that they were in compliance. There was a previous lawsuit that I represented travel on in, and while there was no specific adjudication on the issue of whether the drivers were employees or independent contractors, because the case did settle, it settled at a magistrate settlement conference, we believe, however, that the activity that occurred in that previous litigation is evidence that my client, with my assistance, acted in good faith and had reasonable grounds for believing that they were in compliance with the Fair Labor Standards Act. Thank you. Ms. Moskowitz, you may proceed when you are ready. Thank you, Your Honor. May it please the Court, Laura Moskowitz, representing the Secretary of Labor. Contrary to what you've just heard, as Judge Sote's extremely thorough and well-reasoned summary judgment decision demonstrates, this case was based on a careful investigation and well-supported findings of violations under the Fair Labor Standards Act. When travel on failed to come into compliance with the minimum wage overtime and record-keeping violations found under the Act, former Secretary Scalia filed this enforcement action. Enforcement actions like this one are important not just to obtain back wages for workers, but because when employers such as travel on misclassify their workers as independent contractors and not employees, it creates unfair competition for law-abiding employers that properly classify their workers as employees and pay them the lawful wages that they are due. We urge this Court to affirm the District Court's decision that there are no genuine disputes of material fact raised on any of the issues in this appeal, and that summary judgment is warranted for the Secretary. Counsel, I want to ask you about control, because, so the District Court concluded that, quote, dispatch pressured the drivers to take the trips, right? And you agree with that. Then the owner of the business, Victor, said, quote, they're not forced to do any trip. And Maria, who's the dispatcher, and apparently the sister, said, quote, nobody is penalized for not doing or turning down trips. Nobody. This is not how we do business. How can those two, how can that finding by the District Court or conclusion by the District Court be reconciled with that other evidence? I think it's really not a genuine dispute because what travel law's evidence is saying that they could decline trips without being penalized, and what the District Court found based on the declaration submitted by the drivers and also the declaration submitted by a second dispatcher, Mia Oye, who corroborated what the driver's declaration said, was that the drivers did feel pressure to take trips. And this mostly occurred really, there's no record evidence that drivers declined trips during the day. Most of the record evidence concerns towards the end of the day when the drivers were ready to sign off or go home, and there were less drivers on the road, where dispatch would be contacting drivers and asking them to take trips. So you're saying that pressure is different from penalization. So you may, so they're pressuring them, but there's no consequence, and that's enough to, because it seems like a classic dispute of material fact to me. I mean, there's other examples too. There's a dispute over whether drivers had to work certain hours, and much of the testimony from Maria and Victor said that they didn't, that they got to choose their own hours, which I guess I'll give you a chance to respond to that one too. Well, for that one, I think it's undisputed that Travelon had basic hours of operation and the drivers were expected to work during those hours, which was about 5 a.m. in the morning until 6 p.m. at night, Monday through Friday, and about 5 a.m. to 4 or 5 p.m. on Saturday. That's undisputed. As to the question of whether any of these rise to a genuine dispute of material fact as to the hours or as to declination of trips, given the overwhelming evidence, even if those were true and those were genuine disputes, we submit that they're not material given the other overwhelming evidence on all of the economic realities factors that the drivers were not, in fact, in business for themselves and were economically dependent on Travelon as their employer. I would also note that with respect to declining trips, where there's other indicia of control, for example, telling drivers where to go, when to go, and how to service clients, and having a pay rate be set is similar to the Sixth Circuit's decision in the off-duty police services case, where that's considered to be control. And even where there's evidence of scheduling flexibility, which we don't believe that the drivers — the record evidence shows that the drivers had here, just having some kind of flexibility over schedule does not negate control. And the Sixth Circuit said that in the Keller v. Murry Microsystems case, and the Third Circuit said that as well. One of the things that concerns me, and I actually don't know where this comes from, it might have come from Maria, but I remember something in the record along the lines of, you know, if somebody just decides one day they don't want to work, we don't force them to work, they can stay home, they can, you know, and then I think there was even one piece of testimony that suggested if somebody rolled in outside of those hours or later than the start of those hours, that was fine, too. I just, I can't figure out, it just seems like there's so many, so much evidence that's at loggerheads with each other. How we could, how we could trust the district court's conclusions on these, on these specific matters. Again, I would say that it doesn't rise to a genuine dispute because, well, a genuine dispute of material effect, because ultimately, even if those things were true, we submit that that doesn't change the overall outcome, given the other overwhelming evidence on the six economic realities factors. Do you agree, though, with opposing counsel that control is the most important of the six factors, or would you say we have to balance them all equally? What's the, what's the government's position on that? So, historically, the government's position, as you noted, is, is different than the control test under common law. Under the economic realities test, it's really as a matter of economic reality, what, were the workers in business for themselves, or were they economically dependent on the employer? And those are typically analyzed through these economic realities factors. And this Court has noted in Carlson, for example, when it affirmed a jury verdict that said no one of these factors controls. It's, it's an overall legal conclusion that looks at as a matter of economic reality, are the workers in business for themselves? So, I would say that the government's position, I should also note for the Court, as of about two days ago, the Eastern District of Texas issued a decision in stating a rule regarding independent contractor classification under the Fair Labor Standards Act that does focus on control and opportunity for profit or loss as, as the core factors. The district court said that that rule is in effect as of March 8th of 2021. So, it's not pertinent to the investigative period in this case or the time period in which the violations were determined. So, Ms. Moskowitz, are you, are you telling us that a reasonable jury could look at the evidence and find that three of the factors weighed in favor of an independent contractor status, but that the Court, as a matter of law, could say, well, the other three weigh in favor of employee status, and so that, as a matter of law, I'm going to rule in favor of employee status? Yes. Okay. I would say that, Your Honor. Because the, and this Court had enunciated that again in Carlson that it is ultimately a legal conclusion as a matter of economic reality whether the workers are employees or independent contractors. And that any of those factors, that there's not a technical application, that's not just add up three plus three, it's really a legal conclusion as to the employment status. At what point is the district court usurping the role of the jury then in that process? Well, the district court certainly has a role at summary judgment, which Judge Jody exercised properly here. He didn't improperly weigh evidence or make credibility determinations. He examined very thoroughly the record in the case. Well, could you just mention credibility determinations? It seems to me that the district court may have done that. I believe the district court really made a determination based on the record evidence, not a credibility determination. And the district court is charged with, at summary judgment, looking at all of the evidence, viewing it in a light most favorable to the nonmoving party, and determining could a reasonable juror, given this evidence, find in favor of the nonmoving party. And Judge Jody did that very carefully here and determined that if the workers were employees, they were economically dependent on Travolon as their employer. So I'm actually intrigued by the answer you gave to Judge Graz, that it could be three and three, and the judge could still decide it. What if it's five and one? Five say independent contractor, one says employee, and the district court says, well, that employee factor seems really important here, so I'm not even going to submit it to the jury. At what point, if there is a jury question, does it become a jury question in the government's view? Well, I think that whether a genuine disputes of material fact, it's a jury question. And the model jury instructions in the Eighth Circuit for district courts in the Eighth Circuit talk about this, that these are really, if there are genuine disputes of material fact, then the jury should make special findings, but that the ultimate conclusion is a conclusion for the court to make as a matter of law. So conflicting factors is not a genuine dispute. There must be genuine disputes within those factors? That would be material to the overall outcome, that would change the overall outcome given all of the evidence on the factors. So there's a very slim jury trial, right, in the government's view? I wouldn't necessarily say that. I think where there are genuine disputes of material fact, there are genuine disputes of material fact. In this case, this is not one of those cases that we think this is a close case. So in this case, we had travel loans drivers driving travel loans customers using travel loans equipment with minimal skill required under a closed direction by travel loan, under a pay scheme established by travel loan, where the workers had no ability to exercise independent business initiative or acumen to affect their profits, and they were performing the essential work of the provider, the transportation provider. This is not a close case where we would say, you know, Judge Doty certainly looked at each of these factors and examined them carefully and found that each one of these factors affected the employee's status. And again, Your Honor had asked the question about documentary evidence. There certainly were declarations by the drivers, as well as, as I said, corroborated by the second dispatcher, Mia Oye, that talked about the drivers not being able to take breaks, not being able to choose, that dispatch assigned them trips. They couldn't choose among them. They couldn't choose which of the rides would be more profitable. They couldn't choose, couldn't bid on a particular ride. Also that they had to take their vans to only one dealership for maintenance, that they really were not sort of, I believe that travel loans saying that there was evidence in the deposition testimony that the drivers were able to exercise all kinds of freedom is really just not corroborated by the record evidence. With respect to the issue of liquidated damages, which this Court has said is a very significant burden that the employer has to show that they acted in good faith, to demonstrate that they acted in good faith and also with objective reasonableness regarding their compliance with the Fair Labor Standards Act, we submit that in this case travel has not met that burden and that liquidated damages were proper as Judge Jody found, both because as an evidentiary matter this was not raised during discovery. It was raised for the first time in response to the Secretary's motion for summary judgment regarding the advice of counsel in the prior litigation regarding the FARA case. And this was an assertion made in a brief. The Secretary was not able to analyze this issue of attorney advice of counsel regarding the proper status of the drivers under the Fair Labor Standards Act. But we also submit that even if that does raise a genuine dispute of material fact, that here it wasn't objectively reasonable after Travelon received two adverse rulings in the district court case, the FARA case, none of them were exactly on the main issues that Travelon is making here today, that it would have been reasonable that in order to meet the objective reasonable test that Travelon would need to seek additional advice. Are there any further questions that I can answer for the panel? In closing then, thank you for your time. Thank you for your consideration of this case. We strongly encourage this Court to affirm Judge Jodi's well-reasoned and thorough decision as there are no genuine disputes of material fact, and the drivers certainly were not in business for themselves and were dependent on Travelon as their employer as a matter of law. Thank you. Mr. Menenco, you may proceed with your rebuttal. And I'm going to go ahead and start off with a question. I may need to give you some more time, but as I understand it, Ms. Moskowitz is telling us that even if we find that there are material factual disputes as to some of the factors, you still lose because the district court can find as a matter of law that there's still an employee employer situation. I strongly disagree, Your Honors. As I was preparing for this oral argument, I did run across a case out of the Northern District of Georgia. It's Kellogg, K-E-L-L-O-G-G v. Fannies, Inc. It's 467 F. Supp. 3, 1296. In that case, the Court weighed all six factors, and it determined that while five of the factors seemed to favor employee-employer relationship, that the control factor had numerous disputed issues of material fact, and as a result, the motion for summary judgment, the district court found that was denied. It is the totality of the circumstances, and there indeed can be situations, and admittedly, there are factors in this case that would weigh in favor, perhaps, of employee status, the integral factor, the permanency, perhaps. But all told, and most specifically, in our view, the most important factor, namely that the control has many, many material fact issues that should have precluded summary judgment. I want to point out, with respect to control, there was a deposition of another driver that's not mentioned in the Secretary's brief, but is in ours on page 32. Mr. Derevenko testified, and he was one of the 21 drivers, that the dispatchers told him he could do as many trips as he wanted. He testified that there were two or three occasions when he declined trips that were offered to him. He explained that he thought, quote, if somebody would not want to go, he would be able to decline the assignment, and Maria, the dispatcher, never told him he would be penalized for declining a trip. My time is up. Thank you, Your Honor.